IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN D. WILSON, HJ-5612, )
    Petitioner, )
     )
    v. ) 2:13-cv-651
     )
MARIROSA LAMAS, et al., )
    Respondents. )

REPORT and RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the petition of John D. Wilson for a writ of habeas corpus be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

II. Report:

John D. Wilson, an inmate at the State Correctional Institution at Bellefonte, has presented a petition for a writ of habeas corpus which he has been granted leave to prosecute in forma pauperis.

Wilson is presently serving a seventeen and a half to thirty-five year sentence imposed following his conviction, by the court, of third degree murder at No. CP-02-CR-6649-2004 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on November 18, 2007.[1] Reconsideration of sentence was denied and no appeal was filed.

On October 21, 2008, Wilson filed a post-conviction petition seeking reinstatement of his appellate rights. Those rights were reinstated on October 21, 2008, and an appeal was filed in the Superior Court raising this issue:

> Did the Commonwealth prove beyond a reasonable doubt that Mr. John Wilson shot and killed the decedent Osei Djin where no physical evidence or eyewitness testimony established the identity of the shooter?[2]

---

[1] See: Petition at ¶¶ 1-6.
[2] See: Exhibit 4 to the answer at pp.4,7.

1

On May 11, 2010, the judgment of sentence was affirmed.[3] Leave to appeal to the Pennsylvania Supreme Court was not sought. Thus his conviction became final on June 10, 2010 when the thirty day period in which to seek leave to appeal to the Pennsylvania Supreme Court expired. Gonzalez v. Thaler, 132 S.Ct. 641 (2012).[4]

One hundred seventy-six days later, on December 3, 2010, Wilson filed a post-conviction petition alleging the ineffectiveness of trial counsel. That petition was dismissed on October 11, 2011.[5] A pro se appeal was taken to the Superior Court in which the issues presented were:

> I.  Whether the PCRA court erred by allowing PCRA counsel to withdraw based on an insufficient Turner/Finley letter which PCRA counsel did not make an independent review of the record to determine if the appellant had any meritorious claims other than the uncounseled pro se claims?
>
> II. Whether this court should remand to the PCRA court in light of the recent decision entered by the U.S. Supreme Court in Martinez v. Ryan, which the appellant could raise claims that PCRA counsel failed to raise in regards to Sixth Amendment violations against prior counsels.[6]

On October 10, 2012, the denial of post-conviction relief was affirmed.[7] Leave to appeal to the Pennsylvania Supreme Court was not sought and the time in which to seek that relief expired on November 9, 2012.

The instant petition was executed on May 1, 2013 and received in this Court on May 8, 2013. In it Wilson contends he is entitled to relief on the following grounds:

1. The evidence was insufficient to establish beyond a reasonable doubt that petitioner is guilty of third degree murder.

2. Ineffective assistance of counsel. Trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial can't be relied on as having produced a just result. Trial counsel was ineffective for failing to: (1) file a motion in limine to preclude the admission into evidence of the detective's notes of petitioner's statement; (2) file a motion for mistrial on the grounds [of] prosecutorial misconduct; (3) protect petitioner's right not to be put in jeopardy for the same offense twice; (4) move for sequestration of detective Smith; (5) make an opening statement and closing argument; (6) move for the suppression of petitioner's statement and (7) request evidence to impeach the Commonwealth witness, Lateria Triplett.

---

[3] See: Exhibit 5 to the answer.
[4] Rule 1113 Pa.R.App.P.
[5] See: Exhibits 6 and 9 to the answer.
[6] See: Exhibit 10 to the answer at p.5.
[7] See: Exhibit 11 to the answer.

3. Wilson's due process and equal protection rights were violated by the unfair, inadequate collateral review process.[8]

The background to this prosecution is set forth in the May 11, 2010 Memorandum of the Superior Court which sets forth:

> Appellant was charged with criminal homicide after the victim in this case, Osei Yaw Djin, was shot multiple times on April 30, 2004 and died as a result of those wounds…
>
> At Appellant's trial, it was revealed that in the late afternoon of April 30, 2004, Appellant and his girlfriend, Lateria Triplett, as well as Appellant's brother and Ms. Triplett's two children, traveled to the apartment of Robin Booth, Ms. Triplett's cousin. A second brother of Appellant was already at Ms. Booth's apartment, and he and Appellant began drinking when Appellant arrived. Ms. Triplett testified that after Appellant and his brother began drinking, she decided to go home alone because she did not want to be present while they were drinking alcohol. Thus, she and her two children went outside to a jitney station to catch a ride home. She approached one of the jitney drivers to ask for a ride, but he told her that he was not willing to make the long trip to Ms. Triplett's home. She approached a second jitney driver, later identified as Mr. Djin, and asked for a ride home, but Mr. Djin also refused.
>
> Meanwhile, Appellant and his two brothers also left Ms. Booth's apartment and came to the jitney station. Ms. Triplett testified that she saw Appellant and his brother approach Mr. Djin's vehicle. Mr. Djin told Appellant that he was not making any trips at that time and Mr. Djin and Appellant began arguing. Ms. Triplett claimed that Mr. Djin asked Appellant if he was going to rob him, to which Appellant replied "no". However, the two men continued to argue back and forth as Appellant's brothers attempted to convince Appellant to forget about Mr. Djin and leave the area. Ms. Triplett stated that at that point, she heard three or four gunshots. However, she was looking at her children and did not see who was shooting. Mr. Djin was shot three times in the chest and died from those wounds. Ms. Triplett testified that after the gun fire subsided, she saw Appellant and his brothers, as well as several other people, running from the area. Ms. Triplett stated that she and her children went back to Ms. Booth's apartment and found that Appellant had also returned there.
>
> Ms. Booth also testified at Appellant's trial, stating that when she heard gunshots on April 30, 2004, she looked out her window and saw Ms. Triplett walking with her two children towards Ms. Booth's apartment building. Ms. Booth also observed Appellant standing in a diagonal direction from Mr. Djin's car and that he appeared to be "[t]rying to figure out which way to run." Ms. Booth proceeded to call 9-1-1 to report what she had seen and heard. After Ms. Booth called the

---
[8] See; Petition at ¶12.

3

police, Appellant and Ms. Triplett both arrived back at Ms. Booth's apartment. Ms. Booth informed them that she had called the police.

When police arrived at Ms. Booth's home, they found a firearm in the hallway outside her door. That firearm was later determined to be the gun that shot and killed Mr. Djin. Appellant, who was still in Ms. Booth's apartment when the gun was found, was arrested. During an interview later that same day, Appellant waived his rights under Miranda v. Arizona, 384 U.S. 436 (1966) and proceeded to admit his involvement in the shooting … (record citations eliminated).[9]

Respondents initially contend that the petition is time barred. This contention is not supported by the record. It is provided in 28 U.S.C. § 2244(d)(1) and (d)(2) that:

> (1) A 1-year period of limitation shall apply to the application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of …

Petitioner's conviction became final on June 10, 2010 when he failed to seek leave to appeal to the Pennsylvania Supreme Court. He filed his post-conviction petition on December 3, 2010 or 176 days later. That petition was dismissed and the Superior Court affirmed the dismissal on October 10, 2010. Since a petition for allowance of appeal was not filed, the time in which to do so expired on November 9, 2012. The instant petition was executed on May 1, 2013 and received in this Court on May 8, 2013. Allowing for the three day prison mail box rule 177 days elapsed. Combining this with the previous 176 time lapse a total of 353 days elapsed and the instant petition is not time barred here. For this reason, we address the petition on its merits.

Petitioner's first argument is that the evidence was insufficient to sustain his conviction. In reviewing such a claim, the question is whether any rational fact-finder could have determined guilt beyond a reasonable doubt. Coleman v. Johnson, 132 S.Ct. 2060 (2012). Furthermore, it is for the fact-finder to draw conclusions from the evidence presented. Cavazos v. Smith, 565 U.S.1 (2011). In addition, Pennsylvania defines murder in 18 Pa.C.S.A. §2502 as:

(a) Murder of the first degree – A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

(b) Murder of the second degree – A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

---

[9] See: Exhibit 5 to the answer at pp. 1,4-6.

(c) Murder of the third degree – All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.

As the trial court in its capacity as fact-finder wrote:

Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice. Malice under the law "comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intending to be injured." "Malice may be inferred from the 'attending circumstances of the act resulting in death'"…

In this matter, Officer Matthews credibly testified that "[A]s we're all standing there on the stairwell on the landing… the Housing Authority officer moved one of the pieces of wood and looked down and immediately brought to our attention that they just discovered a firearm on the floor.

Both Latiera Triplett and Robin Booth credibly testified that the defendant had been drinking during the day.

Robin Booth credibly testified that she saw defendant outside when she looked out the window after she heard the shots and that defendant came back to her apartment and was there when the police arrived.

Detective Logan testified that he interviewed the defendant after thoroughly apprising the defendant of this rights. Detective Logan credibly testified that defendant "initially stated that he did not have any part in the homicide itself, that when he arrived in that area the police were actually putting up the yellow tape to secure the area off". Detective Logan further credibly testified that Mr. Wilson finally admitted he was involved in the case. The defendant stated that he argued with the victim and initially Mr. Wilson "was only trying to scare the victim".

Additionally, Detective Smith credibly testified that she was present with Detective Logan during the interview with the defendant and that the defendant said "he saw the victim seated in the drivers' seat make a move, he took that as a threat, pulled out his gun and shot the victim.

Viewed as a whole, the Commonwealth's evidence, presented by credible witnesses, was sufficient to establish beyond a reasonable doubt all the elements of the crimes charged … (transcript and case citations omitted).[10]

---

[10] See: Exhibit 3 to the answer at pp.2-4.

As the record clearly demonstrates, there was more than sufficient credible evidence for the fact-finder to establish guilt beyond a reasonable doubt, and for this reason, this claim does not provide a basis for relief.

Petitioner also makes seven allegations of ineffective assistance of counsel. In his Superior Court appeal from the denial of post-conviction relief, the Court observed:

> Appellant raises PCRA counsel's ineffectiveness for the first time on collateral appeal in his appellate brief. This Court has held that "absent recognition of a constitutional right to effective collateral review counsel, claims of PCRA counsel ineffectiveness cannot be raised for the first time after a notice of appeal has been taken from the underlying PCRA matter." …
>
> [I]n this case, after the PCRA court granted counsel's petition to withdraw and filed an order notifying Appellant of its intent to dismiss his petition without a hearing, Appellant filed a response to the notice of intent to dismiss in which he challenged the court's decision to allow counsel to withdraw, but did not claim PCRA counsel was ineffective. As Appellant did not raise PCRA counsel's ineffectiveness prior to his PCRA appeal, Appellant has waived the issue of PCRA counsel's ineffectiveness…(citations omitted).[11]

In Pennsylvania a claim of ineffective assistance of trial counsel generally can only be raised in a post-conviction petition. Com. v. Bozic, 997 A.2d 1211(Pa.Super.), leave to appeal denied 608 Pa. 659 (2010), cert. denied 131 S.Ct. 2939 (2011). In his post-conviction petition, Wilson claimed that trial counsel was ineffective.[12] However, post-conviction counsel filed a no-merit notice; was permitted to withdraw and the post-conviction petition was dismissed on the grounds that in filing the no merit notice counsel acted appropriately.[13] On appeal, the Superior Court concluded that by appealing the post-conviction court's finding that counsel properly withdrew from representation, Wilson had abandoned the substance of his post-conviction petition namely that trial counsel was ineffective.[14] Thus, his challenge to the effectiveness of trial counsel was never addressed by the appellate court which found the issue abandoned.

In Martinez v. Ryan, 132 S.Ct.1309, 1320 (2012) the Court held:

---

[11] See: Exhibit 11 to the answer at pp.6-7.
[12] See: Exhibit 6 to the answer.
[13] See: Exhibits 5 and 9 of the answer.
[14] Interestingly enough, the post-conviction court in dismissed the post-conviction petition wrote "this court affirms that defendant's *pro se* petition was meritless and finds defendant's claim that [post-conviction] counsel 'did not state that she reviewed the record, transcripts and etc. to ascertain whether there were claims to be raised by her own review' is also without merit" (See: Exhibit 9 to the answer at p.6).

6

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

Because it would appear that Wilson did attempt to raise the claim of ineffective assistance of trial counsel in his post-conviction petition and that the post-conviction court while not addressing this claim deemed it meritless, it would appear hyper-technical to conclude that because his Superior Court appeal addressed whether error had occurred in permitting post-conviction counsel to withdraw, he had abandoned his substantive issues and they will be addressed here.[15]

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either

---

[15] Specifically, in this regard the Superior Court wrote "after the PCRA court granted counsel's petition to withdraw and filed an order notifying Appellant of its intent to dismiss his petition … Appellant [pro se] filed a response to the notice of intent to dismiss in which he challenged the court's decision to allow counsel to withdraw, but did not [reassert] PCRA counsel's ineffectiveness prior to his PCRA appeal, Appellant has waived the issue of PCRA counsel's ineffectiveness" (Exhibit 11 to the answer at p.7). This conclusion appears to fly in the face of the spirit of the Supreme Court's holding in Martinez which is designed to assure that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 132 S.Ct. at 1313. Rather the present posture of the case is that as a result its holding, the Superior Court has barred the petitioner from seeking to raise the claim of ineffective assistance of trial counsel.

7

prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006). This bar is extremely high and petitioner must demonstrate that but for counsel's deficient performance a different result would have occurred. Shotts v. Wetzel, 724 F.3d 364 (3d Cir. 2013).

Petitioner's first claim is that counsel was ineffective during his first trial by failing to file a motion in limine to exclude Detective Logan's notes of the petitioner's confession. While ultimately those notes were excluded at the first trial this exclusion did not occur until after they had been admitted. However, at the time of the retrial they were clearly available to counsel. Since the allegation arose in the context of petitioner's first trial which resulted in a hung jury (TT.7/13-19/05 pp.292-295) and the fact that the notes were made available to the defense prior to the retrial means this issue is of no moment here.[16]

Petitioner's next argument is that counsel was ineffective for failing to request a mistrial on the basis of prosecutorial misconduct for failing to produce Logan's notes prior to the first trial. For the reasons set forth above, this issue is likewise meritless.

Wilson next contends that the second trial resulted in double jeopardy. The Fifth Amendment prohibition against double jeopardy does not arise where the first jury was unable to reach a verdict. Sattazahn v. Pennsylvania, 537 U.S. 101 (2003); Richardson v. United States, 468 U.S. 317 (1984). The record clearly demonstrates that the first jury was unable to reach a verdict (TT.7/13-19/05 pp.292-294). Thus, there was no bar to the retrial. Although the petitioner attempts to cloak this issue in terms of prosecutorial misconduct during the first trial by the withholding of Logan's notes, Logan testified at that trial that after waiving his rights he petitioner confessed to committing the crime although he refused to either author or have an audiotaped statement recorded and his handwritten notes were introduced (Id. at pp.134-145). Following further testimony and argument the notes were excluded and the jury instructed to ignore any reference to that document (Id. at p.173). The failure to produce the notes was inadvertent and their existence was made known to the defense immediately upon discovery, was not used as a trial ploy and ultimately the jury was unable to reach a verdict. To argue prejudice from

---

[16] We observe that at the second trial, the court permitted the notes to be introduced on the basis that they were not newly discovered but rather had been given to the defense two years earlier (TT.8/1 2007 at p.14).

this procedure would require a leap which is not justified and counsel cannot be deemed to have been ineffective in failing to raise this issue.

      Petitioner next contends that counsel was ineffective for failing to move to sequester Detective Smith during the petitioner's second trial. Detective Smith was the final trial witnesses. She testified that she was present during an interview when the petitioner admitted he shot the victim and when he signed Detective Logan's handwritten notes of the interview (TT.8/1/07 pp.244, 246-247). The witness also testified that she was present during Logan's testimony (Id, at pp.248-250) and that petitioner's statement was essentially one of self-defense (Id. at p.250). There is no indication that a request to sequester Detective Smith during Logan's testimony was made, and this forms the basis of petitioner's claim of ineffectiveness. Smith's testimony was merely cumulative of the prior testimony of Detective Logan and supportive of the petitioner's own admissions, since the only question before the court was whether or not the petitioner acted in self-defense. Because the petitioner is unable to show any prejudice as a result of counsel's failure to request sequestration, this claim does not provide a basis for relief here.

      Petitioner next argues that counsel was ineffective for failing to make an opening or a closing statement. The right to the effective assistance of counsel extends to both opening and closing arguments. <u>Yarborough v. Gentry</u>, 540 U.S. 1 (2003). However, the purpose of opening and closing statements is to place the evidence in perspective, and in this case, the court had previously presided during the first trial, and was presumably familiar with the case. In addition, the prosecution likewise did not make such statements. Nor is there any showing that the petitioner suffered any prejudice as a result. For these reasons, there is no basis to conclude that defense counsel was ineffective for failing to make those arguments.

      Petitioner next argues that counsel was ineffective for failing to move to suppression his statement to Detective Logan. At the second trial, Detectives Logan and Smith both testified that petitioner was <u>Mirandized</u> and acknowledged being so informed (Id. at pp.195, 197-199, 243). While defense counsel did attempt to attack the statement although not in the posture of a formal motion to suppress (Id. at pp.200-239), it is clear that there was no basis for moving to suppress the evidence and counsel cannot be

9

deemed ineffective for failing to raise a meritless issue. Real v. Shannon, 600 F.3d 302 (3d Cir. 2010). Thus, this claim likewise does not provide a basis for relief.

Finally, petitioner contents that counsel was ineffective for failing to seek evidence with which to impeach the testimony of Commonwealth witness Lateria Triplett who testified that she heard the shooting and saw the petitioner and his brothers running (Id. at pp.63, 75) and that she went to Booth's apartment where the petitioner was present (Id. at p.67). Wilson now argues that counsel was ineffective for failing to challenge her veracity resulting from her prior conviction of retail theft. However, there was no basis for impeaching her testimony since the petitioner had basically admitted to being present at the crime scene as well as at Booth's apartment. For this reason, the issue is likewise meritless and counsel cannot be faulted for failing to raise it. Real v. Shannon supra.

Thus, the petitioner has failed to demonstrate that counsel's performance fell below any objective standard of reasonableness and for this reason his claim of ineffective assistance of counsel fails.

Petitioner also argues that the collateral review process was inadequate. Without ruling on this matter we have essentially dismissed the post-conviction proceedings and instead directed our focus on the issues which the petitioner sought to raise in those proceedings and found them to be meritless. For this additional reason Wilson is not entitled to relief here.

Because there is no showing that petitioner's conviction was in any way obtained in a manner contrary to federal law as interpreted by the Supreme Court nor involved an unreasonable application of that law, it is recommended that the petition of John D. Wilson for a writ of habeas corpus be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within fourteen (14) days of this date and mailing them to United States District Court, 700 Grant Street, Pittsburgh PA 15219-1957. Failure to file timely objections will waive the right to appeal.

Respectfully submitted,
s/ Robert C. Mitchell

Filed: September 24, 2013        United States Magistrate Judge